UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

       Plaintiff,

v.                            Civil Action No. 2:11-0259

0.39 ACRE OF LAND, MORE OR LESS,
SITUATE IN LOGAN COUNTY, STATE OF WEST VIRGINIA,
AND SHOLAND PROPERTIES GROUP 3, LLC,
formerly known as SHONEY'S PROPERTIES
GROUP 3, LLC, and SHOREST 1451, LLC,

       Defendants.

MEMORANDUM OPINION AND ORDER

Pending is the United States of America's combined motion to dismiss or for total or partial summary judgment against certain claims asserted by defendant ShoRest 1451, LLC ("Shorest"), filed January 4, 2013.  Shorest holds a leasehold interest for the operation of a restaurant on property that is the subject of this condemnation proceeding.  Its lease is derived from the defendant Sholand Properties Group 3, LLC ("Sholand"), which owns the subject property.

I.

On November 17, 1986, Congress enacted the "Water Resources Development Act of 1986 [(the Act)]."  Pub. L. No. 99-

662, 100 Stat 4082.  Section 401 of the Act states in pertinent

part as follows:

> (a) AUTHORIZATION OF CONSTRUCTION. — The following
> works of improvement for the control of destructive
> floodwaters are adopted and authorized to be
> prosecuted by the Secretary substantially in
> accordance with the plans and subject to the
> conditions recommended in the respective reports
> designated in this subsection, except as otherwise
> provided in this subsection:
>
> . . . .
>
> ISLAND CREEK BASIN, WEST VIRGINIA
>
> The project for flood control, Island Creek
> Basin, in and round Logan, West Virginia:
> Report of the Chief of Engineers dated April
> 25, 1986, at a total cost of $86,000,000,
> with an estimated first Federal cost of
> $62,200,000 and an estimated first non-
> Federal cost of $23,800,000.

Id.


On April 19, 2011, the United States instituted this

action with its complaint in condemnation.  On June 9, 2011,

following certain amendments, the court received the operative

pleading for present purposes ("operative pleading").  Through

the exercise of its eminent domain powers, the United States has

taken certain interests in land for purposes of completing the

flood control Project.


Attached to the operative pleading are schedules that

fully describe the properties and interests taken by the United

States.  The listing of those tracts and interests follows:

2

```
Tract No. 107E  ------------ Channel Improvement Easement
                             Pipeline Easement

Tract No. 107E-2------------ Temporary Work Area Easement

Tract No. 107E-3------------ Rock Anchor Easement

Tract No. 107E-4------------ Pipeline Easement
```

The Channel Improvement Easement granted as to Tract 107E provides an easement to construct, operate, and maintain channel improvement works on, over and across Tract No. 107E. The Pipeline Easement for Tract No. 107E and Tract No. 107E-4 allows for, _inter_ _alia_, the placement and repair of sanitary and storm sewer pipelines.  The temporary work easement granted as to Tract No. 107E-2 provides a right-of-way lasting up to five years from the date possession is commenced by the United States for use by its representatives, agents, and contractors as a work area.  It includes the right to move, store, and remove equipment and supplies, and erect and remove temporary structures on the land and to perform any other necessary work. The rock anchor easement granted as to Tract No. 107E-3 provides, _inter_ _alia_, for the operation and maintenance of underground anchors or tie-backs under and through Tract No. 107E-3 without disturbing the surface of the land.  Each of the easements reserves to Sholand, its heirs and assigns, all rights and privileges as may be used without interfering with or abridging the rights and easements acquired.  All but the rock

anchor easement include broad rights to clear cut brush and timber, remove structures, and excavate.

On June 9, 2011, the United States filed its Second Amended Declaration of Taking ("Declaration"). The author of the Declaration, Deputy Assistant Secretary of the Army Joseph F. Calcara, estimates the amount of just compensation as $156,500. On June 15, 2011, the court directed that the United States' check in that amount be deposited into the registry. On June 28, 2011, the court entered its Judgment on the Declaration, delivering possession to the United States of the interests discussed supra.

On July 6, 2011, defendant Sholand answered. It alleged that the interests taken inadequately described all of the rights and interests necessary to complete the Project and that the United States inaccurately calculated the amount due as just compensation. On September 4, 2012, the court permitted the United States to deposit into the registry the sum of $23,251.93 as additional estimated just compensation.

Following discovery, the United States moved to dismiss, or for total or partial summary judgment, solely on grounds relating to the matter of the just compensation, if any, that is due Shorest. As noted, Shorest operated a restaurant on

4

property within or adjacent to the aforementioned easements that
has closed since the taking.  It leases from another Shoney's
entity that in turn leases the property from Sholand.

The United States emphasizes that it did not take the
lease or leasehold interest involving Shorest.  Shorest has,
however, asserted an entitlement to just compensation in
connection with the closing of its restaurant due to the alleged
wrongful conduct of the United States in completing the Project.
The United States asserts that these alleged losses are
consequential damages that are not compensable in an eminent
domain or condemnation proceeding under federal law.

On April 12, 2013, the court held a pretrial
conference attended by counsel for all parties.  Counsel for the
United States observed that Shorest may be obliged to bring its
just compensation claim, if at all, in the Court of Claims.  On
April 23, 2013, the court directed the parties to brief the
permissibility, or lack of it, of the court exercising subject
matter jurisdiction over Shorest's claims.  Counsel were
directed to the decisions in Narramore v. United States, 960
F.2d 1048 (9th Cir. 1992) and United States v. 21.54 Acres of
Land, 491 F.2d 301, 304 (4th Cir. 1973).  Following briefing,
the matter is ripe for adjudication.

The court must now address both the subject matter jurisdiction issue arising at the pretrial conference and the just compensation issues developed in the briefing related to the United States' combined motion to dismiss or for total or partial summary judgment as to Shorest.

II.

A.    Subject Matter Jurisdiction

In 21.54 Acres, our court of appeals addressed a take that resulted in the United States acquiring flowage easements necessary for a harbor and river improvement project.  The take involved 20 tracts consisting of approximately 21.54 acres.  The panel recited the long-settled law respecting the Executive's taking authority, and the Judiciary's inability to expand thereon:

> When the government proceeds by formal condemnation, the general rule is that the extent of the take is a discretionary decision for the condemning authority which may not be modified by the judiciary. The reason for this is that as long as the government acts within the scope of its authority, it cannot be compelled to take other than that which it has determined is needed. And if, ultimately, it is determined that the government has taken more than it has formally condemned and paid for, the landowner may recover under the Tucker Act for the additional take.

6

Id. at 304 (citing Berman v. Parker, 348 U.S. 26 (1954)); see id. at 305 (further observing that a Fifth Circuit decision had held that "a district court could not compel the government to take an avigation easement when the declaration of taking specified that a clearance easement was being condemned. The reason was that the United States had the discretion to take either type of easement and that once it had elected to take a clearance easement a court is without jurisdiction to require the taking of something else."); Narramore, 960 F.2d at 1050 ("[U]under the various condemnation statutes, a federal court enjoys no jurisdiction to entertain suits or counterclaims seeking to enlarge or contract the scope of the taking. Under the condemnation statutes, the judicial branch fixes the amount of just compensation -- 'the price of the taking' -- for the property described in the Government's filing. Federal court jurisdiction does not extend beyond the scope of the Government's filing. This jurisdictional limit springs from the sovereign immunity doctrine. 'When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the Court's jurisdiction.'") (citations omitted).

Based upon the foregoing rule, the United States asserts as follows respecting subject matter jurisdiction:

>Shorest does not own the property . . . and is not entitled to any diminution in the value . . . .

7

> Furthermore, the United States did not take the fee
> simple estate in the land nor did it take Shorest's
> leasehold.  Instead, the United States took certain
> temporary and permanent easements which only affect a
> certain portion of the parcel of property, most
> specifically along the Island Creek channel.

(Gov't Mem. in Supp. at 4).  It is thus the United States'

position that "the claims of Shorest . . . are beyond the scope

of the Second Amended Declaration of Taking [and should] be

dismissed . . . for lack of subject matter jurisdiction."  (U.S.

Supp. Br. at 5).


     It would appear, however, that Shorest may, at a

minimum, be entitled to some portion of the unitary just

compensation award arising out of the damage to its leasehold

interest from the temporary taking.  One of the work areas

within the temporary easement taken encompassed some of the

leased restaurant parking lot.  The just compensation award

would thus properly include, as to that temporary easement, the

fair rental value of the property for the period of the taking.

See, e.g., Otay Mesa Property, L.P. v. United States, 670 F.3d

1358, 1364 (Fed. Cl. 2012) (citing Kimball Laundry Co. v. United

States, 338 U.S. 1, 7 (1949) ("[T]he proper measure of

compensation [in a temporary takings case] is the rental that

probably could have been obtained . . . . ").

Having considered both <u>21.54 Acres</u> and the <u>Narramore</u> decisions, the court concludes that it is vested with subject matter jurisdiction to entertain Shorest's claims, at least to the extent that they are not foreclosed by either the Federal Tort Claims Act ("FTCA") or the rule that prohibits the recovery of consequential damages in condemnation proceedings.

B.   The United States' Motion to Dismiss and for Total or
     Partial Summary Judgment

Just compensation is that sum necessary to put the owner in as good a pecuniary position, but no better, than if his property had not been taken.  See <u>Brown v. Legal Foundation of Washington</u>, 538 U.S. 216, 236 (2003) (noting a condemnee "'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'") (quoting <u>Olson v. United States</u>, 292 U.S. 246, 255 (1934)).  The compensation to be awarded includes all elements of value intrinsic to the property but it must not exceed the market value. <u>See</u>, <u>e.g.</u>, <u>United States v. Twin City Power Co.</u>, 350 U.S. 222, 235 (1956).

As the Supreme Court has observed, "even if the Government physically invades only an easement in property, it must nonetheless pay just compensation."  <u>Kaiser Aetna v. United</u>

9

States, 444 U.S. 164, 180 (1979); United States v. Causby, 328

U.S. 256, 265 (1946).  In the easement setting, the measure of

just compensation is "the difference between the value of the

property before and after the Government's easement was

imposed," which is hereinafter referred to as "the before-and-

after measure."  United States v. Virginia Elec. & Power Co.,

365 U.S. 624, 632 (1961); see also National Food & Beverage Co.,

Inc. v. United States, 105 Fed. Cl. 679, 703 (Fed. Cl. 2012)

("When the government takes an easement, just compensation is

typically reckoned by 'the difference between the value of the

property before and after the [g]overnment's easement was

imposed.'") (citation omitted).

        The before-and-after measure adequately takes into

account the matter of severance damages.  See, e.g., United

States v. 2.33 Acres of Land, 704 F.2d 728, 730 (4th Cir. 1983)

("The commissioners purported to use a before and after method

of valuation; and . . . if this method is properly employed when

there is a partial taking, severance damages should not be

allowed.") (emphasis added).  The court does not understand the

decision in United States v. 97.19 Acres of Land, 582 F.2d 878,

882-83 (4th Cir. 1978), cited by Shorest, to warrant a valuation

approach different from the before-and-after measure discussed

in 2.33 Acres of Land.  That later decision accounted for the

earlier opinion in 97.19 Acres of Land.  See 2.33 Acres of Land,

704 F.2d at 728 (citing United States v. 97.19 Acres of Land,

More or Less, 582 F.2d 878, 880 (4th Cir. 1978)).  Accordingly,

the before-and-after valuation measure will guide the single

award to be fashioned by the jury.[1]

     The thrust of the United States' summary judgment

request is that Shorest's claims should be dismissed inasmuch as

they amount to (1) damages of a consequential nature -- such as

lost profits  -- which are not recoverable in a condemnation

proceeding, and (2) claims in tort -- such as the United States

and its contractor allegedly impeding traffic into the

restaurant -- which are recoverable only in a separate action

---

[1]    The court refers to the unit rule, which provides that when land in which certain persons have separate interests or estates is taken by the United States for public use, the amount of compensation must be determined as if the property was in single ownership and without reference to conflicting claims or liens. See United States v. 6.45 Acres of Land, 409 F.3d 139, 146 (3rd Cir. 2005).  The court intends to instruct the jury consistent with the unit rule.  Once the award is determined, it may then be apportioned among the holders of the various interests in the property, taking into account any agreements between them.  Id. at 147.
    The defendants should bear in mind that while the jury is entitled to consider all factors that bear upon the market value of the property, they are not entitled to have those factors added together, with the total taken as the market value of the property.  See United States v. 91.90 Acres of Land, 586 F.2d 79, 87 (8th Cir. 1978); 97.19 Acres of Land, 582 F.2d at 882-83; Cade v. United States, 213 F.2d 138, 142 (4th Cir. 1954).  The property must be valued as a whole.

under the FTCA (as against the United States) or in common law
(as against the contractor).

As noted, Shorest may, at a minimum, be entitled to
some portion of the unitary just compensation award arising out
the damage to its leasehold interest from the temporary taking.
Its damages claims are thus not susceptible to dismissal in
their entirety.  Additionally, Shorest appears to abandon nearly
all of the consequential damage elements challenged by the
United States in its pending motion, such as lost profits,
damage to good will, relocation expenses, frustration of
business plans, and other consequential harms.  This
abandonment, along with proper instructions respecting the
before-and-after valuation method, appears to address the
concerns expressed in the United States' pending motion.

It is, accordingly, ORDERED that the United States'
combined motion to dismiss or for total or partial summary
judgment be, and it is hereby, granted to the extent reflected
herein and otherwise denied as to its residue.

12

The Clerk is directed to transmit copies of this order

to all counsel of record and any unrepresented parties.

ENTER:   July 25, 2013

John T. Copenhaver, Jr.
United States District Judge