```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                            Civil Action No. 2:11-0259

**0.39 ACRE OF LAND, MORE OR LESS,
SITUATE IN LOGAN COUNTY, STATE OF WEST VIRGINIA,
AND SHOLAND PROPERTIES GROUP 3, LLC,
formerly known as SHONEY'S PROPERTIES
GROUP 3, LLC, and SHOREST 1451, LLC,**

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are the post-trial briefs of Sholand Properties Group 3, LLC ("Sholand") and Shorest 1451, LLC ("Shorest"), addressing the apportionment between them of the amount of just compensation awarded by the jury during the trial herein.

I.

On November 17, 1986, Congress enacted the "Water Resources Development Act of 1986 [(the Act)]." Pub. L. No. 99-662, 100 Stat 4082. Section 401 of the Act states in pertinent part as follows:

> (a) AUTHORIZATION OF CONSTRUCTION. — The following works of improvement for the control of destructive floodwaters are adopted and authorized to be prosecuted by the Secretary substantially in accordance with the plans and subject to the conditions recommended in the respective reports designated in this subsection, except as otherwise provided in this subsection:
>
> . . . .
>
> ISLAND CREEK BASIN, WEST VIRGINIA
>
> The project for flood control, Island Creek Basin, in and round Logan, West Virginia: Report of the Chief of Engineers dated April 25, 1986, at a total cost of $86,000,000, with an estimated first Federal cost of $62,200,000 and an estimated first non-Federal cost of $23,800,000.

**Id.**

On April 19, 2011, the United States instituted this action with its complaint in condemnation. Through the exercise of its eminent domain powers, the United States took certain interests in land for purposes of completing a flood control project.

Attached to the operative pleading are schedules that fully describe the properties and interests taken by the United States. The listing of those tracts and interests follows:

```
Tract No. 107E    ------------- Channel Improvement Easement
                                Pipeline Easement

Tract No. 107E-2------------- Temporary Work Area Easement

Tract No. 107E-3------------- Rock Anchor Easement
```

Tract No. 107E-4------------- Pipeline Easement

Shorest formerly operated a restaurant on property within or adjacent to the aforementioned easements ("property"). It leased the property from another Shoney's entity, Sholand, LLC, that, in turn, leased it from Sholand. Sholand, LLC, is the managing and sole member of Sholand. On June 5, 2011, Shorest informed Sholand, LLC, that the restaurant had closed in view of the flood control project. The June 5, 2011, letter provides materially as follows:

> Our company has been seriously harmed by "The Army Corp of Engineers" in Logan, West Virginia, due to the "Condemnation Construction". The sales of this store have fallen to an all-time-low, with no relief in sight. Closing the store road and/or going down to one lane in the evenings, constant interruptions of water and electrical service, and just general re-routing of traffic has made it almost impossible for customers [to] get to our restaurant. Not only has this affected . . . [Shorest] as a company, but we can no longer afford to operate this restaurant.
>
> I know that this creates many legal issues for Sholand LLC. I will make myself personally available, or our legal counsel, to discuss these issues.

(Ex. D, Sholand Br.).

On June 9, 2011, the United States filed its Second Amended Declaration of Taking ("Declaration"). The author of the Declaration, Deputy Assistant Secretary of the Army Joseph

3

F. Calcara, estimated the amount of just compensation for the property as $156,500.

On June 17, 2011, Sholand, LLC, sent to Shorest a letter entitled "Notice of Termination of Sublease," which provided pertinently as follows:

> [Shorest] . . . has failed to pay Base Rent and Taxes (property and sales) for the months of November 2010 through June 2011 in the amount of $68,270.47. [It] . . . also ceased operations of its business at the Premises as of June 5, 2011.
>
> According to Section 14(b) of the Sublease, upon the occurrence of a default, . . . [Sholand, LLC] may "terminate this Sublease."
>
> Therefore, this letter shall serve as Notice that . . . [Sholand, LLC] hereby terminates the Sublease.
>
> [Shorest] . . . has vacated the premises so . . . [it] has been deemed to have surrendered possession of the Premises to . . . [Sholand, LLC].

(Ex. F, Sholand Br.).

On June 15, 2011, the court directed that the United States' check in the amount of $156,500 be deposited into the registry. On June 28, 2011, the court entered its Judgment on the Declaration, delivering possession to the United States of the interests discussed _supra_. On September 4, 2012, the court permitted the United States to deposit into the registry the sum of $23,251.93 as additional estimated just compensation.

On August 27, 2013, a jury trial commenced for purposes of determining the amount of just compensation due on the property. On August 29, 2013, the jury returned its verdict ascertaining the amount of just compensation at $450,917.04. That same day, the court directed counsel for Sholand and Shorest to meet and confer on or before September 20, 2013, to discuss their respective positions concerning the apportionment of the just compensation award. On October 2, 2013, the court authorized the United States to deposit into the registry the additional sum of $272,325.04 in satisfaction of the Judgment and accrued interest. Inasmuch as Sholand and Shorest were unable to amicably resolve the matter of apportionment, a briefing schedule was set on the matter, with the final brief arriving November 15, 2013.

The parties do not dispute that the apportionment of the just compensation award is controlled by the terms of certain lease agreements. Sholand asserts that it is entitled to the entirety of the just compensation award under those instruments. Shorest asserts that the lease agreements redound to its favor. As a fallback position, Sholand asserts that Shorest should receive no portion of the just compensation award inasmuch as it proved no compensable damages at trial.

II.

As noted, there are two leases that inform the outcome here. The parties to these dual agreements are quite important in assessing the matter of apportionment. The first accord is the Master Lease, referred to hereafter as the Prime Lease, executed on September 6, 2000. The parties to the Prime Lease are Sholand, under its former name of Shoney's Properties Group 3, LLC, as lessor, and Shoney's, Inc., now known as Sholand, LLC, as lessee. Shorest is not a party to the Prime Lease.[1]

The second relevant instrument is an August 8, 2005, Sublease Agreement between landlord Sholand, LLC, under its former name of Shoney's, LLC, a moniker that came after the name Shoney's Inc., and tenant Shorest.[2] Paragraph 7 of the Sublease

---

[1] Shorest does not dispute the following recitation offered by Sholand concerning the corporate name changes:

> The Prime Lease states that the Lessor is Shoney's Properties Group 3, LLC, but this entity changed its name to Sholand Properties Group 3, LLC in March of 2007. The Prime Lease states that the Lessee is Shoney's Inc., but this entity was converted to Shoney's LLC and then the name was changed to Sholand, LLC in 2007.

(Sholand Br. at 2 n.1).

[2] Shorest additionally does not dispute the following account by Sholand:

Agreement between Sholand, LLC, and Shorest provides as follows: "In the event of a Taking of all or part of the Premises under the power of eminent domain, the terms and provisions of the Prime Lease shall control." (Sublease Agmt. ¶ 7(a)).[3] Paragraph 7 contains additional terms as well.

At subparagraph 7(b) is found a provision respecting condemnation that applies only "[i]n the event of a Taking in which Landlord[, Sholand, LLC,] or Prime Lessor[, Sholand,] does not elect, or is not permitted, to terminate this Sublease." (Sublease Agmt. ¶ 7(b)). Inasmuch as Sholand, LLC, terminated the Sublease Agreement on June 17, 2011, this provision does not apply.

At subparagraph 7(c) is found another provision respecting condemnation. It provides as follows:

---

> The sublease states that Shoney's LLC is the landlord, but this entity changed its name to Sholand, LLC, in 2007.

(Sholand Br. at 2 n.2).

[3] Shorest asserts that the Sublease Agreement does not cover temporary takings. That is not the case. The term "Taking" is defined in subparagraph 1 of the Sublease Agreement. It broadly covers "a condemnation or taking by . . . a federal . . . agency of [sic] instrumentality thereof, <u>of any portion of the Premises</u> during the Term for any public . . . use under any governmental law . . . ." (Sublease Agmt. ¶ 1 (emphasis added)). The provision includes no temporal limits and plainly covers the waterfront for all possible takings, be they total or partial, permanent or temporary.

> (c) In the event of a Taking <u>in which this Sublease is not terminated as a result thereof</u>: [Shorest] . . . shall not be entitled (except as set forth in Section 7(b) hereof) to any part of the Award for the Premises, but [Shorest] . . . shall have the right, so long as any such recovery by [Shorest] . . . does not reduce the Award to landlord or any award or payment to Prime Lessor, to recover from the condemning authority such compensation as is specifically awarded to [Shorest] . . . to reimburse [it] . . . for (i) any cost that [Shorest] . . . may incur in removing [Shorest] . . . Property from the Premises, and (ii) any loss of [Shorest's] . . . business.

(Sublease Agmt. ¶ 7(c) (emphasis added)). The June 5, 2011, letter from Shorest informed Sholand, LLC, that, due to challenges presented by the taking, it had closed the restaurant. The June 17, 2011, letter from Sholand, LLC, deeming that abandonment, <u>inter alia</u>, as a default under the Sublease Agreement, terminated the accord. Accordingly, termination of the Sublease Agreement came "as a result" of the taking. Subparagraph 7(c) likewise has no application here.

Those same circumstances, however, do implicate the process found in subparagraph 7(d), which provides as follows:

> (d) If this Sublease is terminated by Landlord or Prime Lessor by reason of a Taking, then Landlord shall be entitled to receive the entire Award therefrom and [Shorest] . . . hereby assigns to Landlord all of its right, title and interest in and to all and any part of such Award.

(Sublease Agmt. ¶ 7(d)). Inasmuch as the Sublease Agreement was terminated by Sholand, LLC, "by reason of" the taking,

subparagraph 7(d) vests in Sholand, LLC, "the entire Award" without any sum inuring to Shorest's benefit.

Sholand, LLC, as noted, is not a party to this action. The question thus remains whether Sholand may claim the just compensation awarded by the jury in view of the Sublease Agreement vesting that award in Sholand, LLC. The Prime Lease appears to address apportionment between Sholand and Sholand, LLC, but Sholand, LLC, has not had the opportunity to be heard on those provisions. Depending upon the corporate relationship between Sholand and Sholand, LLC, they may wish to adjust the dispute informally, to the extent any such dispute exists. If not, the court desires to hear from both Sholand and Sholand, LLC, respecting the matter of apportionment between them.

It is, accordingly, ORDERED that Sholand be, and hereby is, directed to consult with the authorized representatives of Sholand, LLC, and inform the court no later than December 13, 2013, of any further proceedings necessary herein. In the event that the parties are able to resolve the matter without the necessity of further proceedings, the court will expect the contemporaneous filing of any requisite company resolution and affidavit necessary to reflect the authorized actions of Sholand, LLC. If the parties are unable to resolve the matter, the court will consider adding Sholand, LLC, as a

party to this action pursuant to Federal Rule of Civil Procedure 19 so that it might be heard on the matter of apportionment.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: November 26, 2013

John T. Copenhaver, Jr.
United States District Judge